Court of Appeals No. 11-80017

_____

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

_____

## U.S. SECURITY ASSOCIATES, INC.,

*Defendant/Petitioner*

vs.

## MUHAMMED ABDULLAH,
**as an individual and on behalf of all others similarly situated**

*Plaintiffs/Respondents*

_____

ON PETITION FOR INTERLOCUTORY REVIEW FROM THE UNITED STATES DISTRICT
COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA
CASE NO. CV 09-09554 GHK (Ex)
THE HONORABLE GEORGE H. KING PRESIDING

_____

## RESPONDENTS' ANSWER IN OPPOSITION TO PETITION FOR
## PERMISSION TO APPEAL
## Fed. R. Civ. P. 23(f)

_____

PETER M. HART
KIMBERLY A. WESTMORELAND
MELISSA M. COYLE
**LAW OFFICES OF PETER M. HART**
One Wilshire Blvd., Suite 2200
Los Angeles, CA 90017
Telephone: (310) 478-5789

KENNETH H. YOON
LINDA P. WHITEHEAD
**LAW OFFICES OF**
**KENNETH H. YOON**
One Wilshire Blvd., Suite 2200
Los Angeles, CA 90017
Telephone: (213) 488-6555

LARRY W. LEE
**DIVERSITY LAW GROUP**,
**A Professional Corporation**
444 S. Flower Street, Suite 1370
Citigroup Center – Suite 1370
Los Angeles, CA 90071
Telephone:  (213) 612-0988

*Attorneys for Plaintiffs-Respondents Muhammed Abdullah, Christina Aguilar and William Kimbrough, IV*

# TABLE OF CONTENTS

I.     INTRODUCTION ...........................................................................................1

II.    PROCEDURAL HISTORY ...........................................................................1

III.   ARGUMENT..................................................................................................1

     A.      Summary of Argument..........................................................................1

     B.      Interlocutory Appeal Would Be a Waste of the Court's and the Parties' Time and Resources ...........................................................2

     C.      Defendant Has Failed to Show that the District Court's Class Certification Decision Is Manifestly Erroneous....................................3

          1.      The District Court Did Not Abuse Its Discretion in Determining the Applicability of the "Nature of the Work" Exception Presents a Common Legal Question..............3

          2.      The District Court's Finding that Class Members Were Not Provided Off-Duty Meals Is Not in Error, Either Factually or Legally ...............................................................7

                 a.      "On-Call" Time Is Not at Issue .......................................7

                 b.      The District Court Did Not Err in Finding Predominant Issues of Fact and Law ...............................8

                 c.      Defendant's Declarations Should Have Been Excluded ...........................................................................9

     D.      There Is No Unsettled and Fundamental Issue of Law That Is Likely to Evade End-of-the-Case Review As to Whether the "Nature of the Work" Exception Could Be Determined on a on a Class-Wide Basis ......................................................................10

     E.      There Is No Death Knell Situation ......................................................13

IV.   CONCLUSION............................................................................................15

# TABLE OF AUTHORITIES

**Federal Cases**

*Armitage v. City of Emporia*, 982 F.2d 430 (10th Cir. 1992) .................................8

*Blair v. Equifax Check Servs., Inc.*, 181 F.3d 832 (7th Cir. 1999) ........................15

*In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012 (7th Cir. 2002) .........................14

*Cambridge Elecs. v. MGA Elecs., Inc.*, 227 F.R.D. 313 (C.D. Cal. 2004)...............9

*Chamberlan v. Ford Motor Co.*, 402 F.3d 952 (9th Cir. 2005) ....2, 3, 11, 13, 14, 15

*Pugel v. Morgan Stanley*, 221 Fed. Appx. 683 (9th Cir. 2007) ................................5

*Sullivan v. Kelly Servs., Inc.*, No. C 07-2784 CW, 2008 U.S. Dist. LEXIS
    91608 (N.D. Cal. 2008) ..............................................................................5

*United Steel, Paper & Forestry, Rubber, Mfg. Energy, Allied Indust.*
    *& Serv. Workers Int'l Union*, 593 F.3d 802 (9th Cir. 2010) .........................5

*West v. Circle K Stores, Inc.*, No. CIV S-04-0438 WBS GGH, 2006
    WL 165298 (E.D. Cal. June 13, 2006) ...................................................12, 13

*Yeti v. Deckers Outdoor Corp.*, 259 F.3d 1101 (9th Cir. 2001)...............................9

**State Cases**

*Church v. Jamison*, 143 Cal. App. 4th 1568 (2006) .................................................5

*Conley v. Pacific Gas and Elec. Co.*, 131Cal. App. 4th 260  (2005)........................5

*Estrada v. FedEx Ground Package Sys., Inc.*, 154 Cal. App. 4th 1(2007)...............5

*Hudgins v. Neiman Marcus Group, Inc.*, 34 Cal. App. 4th 1109 (1995)..................5

**Statutes**

*Cal. Lab. Code § 226.7* ......................................................................................5, 12

**Rules and Advisory Committee Notes**

*Fed. R. Civ. P. 23(f)* ...................................................................................1, 2, 3, 15

*Fed R. Civ. P. 23(f) Advisory Committee Notes to 1998 Amendments*..............11, 15

*Fed R. Civ. P. 26* .....................................................................................................9

*Fed R. Civ. P. 26(a)* .................................................................................................9

*Fed R. Civ. P. 37(c)(1)*.............................................................................................9

# I.  INTRODUCTION

Defendant U.S. Security Associates, Inc. ("Defendant") seeks interlocutory review under Federal Rule of Civil Procedure Rule 23(f) of the district court's order granting class certification.  While Defendant's "Relief Requested" is that the certification order be reversed or vacated in total (Pet., pg. 3), its Petition addresses only one of the seven subclasses certified, the Meal Break Subclass. Defendant's petition should be denied as to the Meal Break Subclass addressed by Defendant, and as to all other subclasses certified which are not addressed by Defendant's petition.

Defendant has failed to establish that any of the standards for interlocutory review in this circuit have been met.  This failure is especially blatant given that Defendant objects only to the certification of one out of seven subclasses.

# II.  PROCEDURAL HISTORY

Plaintiffs Muhammed Abdullah, Christina Aguilar and William Kimbrough, IV filed their motion for class certification on June 14, 2010.  On January 12, 2011, the district court entered an order certifying seven subclasses. (Pet'r's Ex. 1, 1-13.)  One of the subclasses certified is a Meal Break Subclass. (Pet'r's Ex. 1, 4-6, 13.)  On January 26, 2011, Petitioner filed the instant petition for permission to appeal in which it attacks the district court's certification of the Meal Break Subclass.

# III. ARGUMENT

## A.    Summary of Argument

As set forth in greater detail below, the following are several specific broad reasons Defendant's Petition should be denied:

- It is inappropriate for this Court to grant a petition for review based on factual error where the district court reviewed Defendant's 103

declarations for four months[1] and the petitioner only provides this Court 12 of these 103 declarations from which to base a decision;

- An interlocutory appeal from a certification order is not warranted when a petitioner seeks appeal from a single certified subclass, *when there are six other certified subclasses* covering the same class members; and

- It is not an abuse of discretion for the district court to find a common legal question where there is no binding legal precedential opinion and where the decision is consistent with the California Department of Labor Standards Enforcement's view.

**B.     Interlocutory Appeal Would Be a Waste of the Court's and the Parties' Time and Resources**

As the Ninth Circuit established in *Chamberlan*, interlocutory review under Federal Rules of Civil Procedure Rule 23(f) will be "most appropriate" when:

> (1) there is a death-knell situation for either the plaintiff or defendant that is independent of the merits of the underlying claims, coupled with a class certification decision by the district court that is questionable; (2) the certification decision presents an unsettled and fundamental issue of law relating to class actions, important both to the specific litigation and generally, that is likely to evade end-of-the-case review; or (3) the district court's class certification decision is manifestly erroneous.

*Chamberlan v. Ford Motor Co.*, 402 F.3d 952, 959 (9th Cir. 2005).

As the Ninth Circuit noted, however, "[i]nterlocutory appeals are generally disfavored because they are disruptive, time-consuming, and expensive." *Id.* (internal quotation marks and citation omitted). "Like other circuits that have

---

[1]     Time between Plaintiffs' reply brief and the district court order.

considered the issue," the Ninth Circuit expressed its view that "petitions for *Rule 23(f)* review should be granted sparingly." *Id.*

Here, Defendant fails to establish that interlocutory review would be appropriate under the Ninth Circuit's guidelines. Instead, it would be "disruptive, time-consuming, and expensive." This is especially true here where Defendant seeks review of only one of seven subclasses certified by the district court.

Moreover, appeal is premature. After merits discovery is completed, Defendant is free to move to decertify the Meal Break Subclass if there is evidence to support decertification. At this point, however, the district court has found that common issues predominate as to Plaintiff's case-in-chief, concerning the implementation and legality of Defendant's on-duty meal policy. (Pet'r's Ex. 1, p. 5.) The district court further found that the applicability of the "nature of the work" *defense* asserted by Defendant, given its single guard post staffing model, presents a common legal question that is susceptible to class-wide determination. (Pet'r's Ex. 1, p. 5.) Accordingly, interlocutory appeal at this point is not warranted.

## C.     Defendant Has Failed to Show that the District Court's Class Certification Decision Is Manifestly Erroneous

As determined by the *Chamberlan* court, "[t]he error in the district court's decision must be significant; bare assertions of error will not suffice. Any error must be truly "manifest," meaning easily ascertainable from the petition itself." *Id.* at 959. Such is not the case here.

### 1.     The District Court Did Not Abuse Its Discretion in Determining the Applicability of the "Nature of the Work" Exception Presents a Common Legal Question

Defendant contends that the district court based its certification of the Meal Subclass on a "repudiated and no longer applicable legal standard" for

determining whether the "nature of the work" exception applies so as to permit on-duty meals. (Pet., pp. 4, 6.)

Industrial Welfare Commission ("IWC") Wage Order No. 4-2001 provides, in relevant part:

> Unless the employee is relieved of all duty during a 30 minute meal period, the meal period shall be considered an "on duty" meal period and counted as time worked. An "on duty" meal period shall be permitted only when the nature of the work prevents an employee from being relieved of all duty and when by written agreement between the parties an on-the-job paid meal period is agreed to. The written agreement shall state that the employee may, in writing, revoke the agreement at any time.

IWC Wage Order No. 4-2001 ¶ 11.

The district court was guided in its decision to certify the Meal Break Subclass by Division of Labor Standards Decision Enforcement ("DLSE") Opinion Letter 2002.09.04. In this letter, the DLSE set forth a multi-factor test to be applied to determine whether the nature of the work prevents an employee from being relieved of all duty.[2] (Pet'r's Ex. 4, p. 2.) The opinion letter concluded that an off-duty meal must be provided unless these factors, taken as a whole, point to the conclusion that "the nature of the work makes it virtually impossible for the employer to provide the employee with an off-duty meal period." (Pet'r's Ex. 4, p. 2.) Defendant argues that this standard has been

---

[2] The factors set out in the 2002.09.04 DLSE Opinion Letter include: "the type of work, the availability of other employees to provide relief to an employee during a meal period, the potential consequences to the employer if the employee is relieved of all duty, the ability of the employer to anticipate and mitigate these consequences such as by scheduling the work in a manner that would allow the employee to take an off-duty meal break, and whether the work product or process will be destroyed or damaged by relieving the employee of all duty." (Pet'r's Ex. 4, p. 2.)

"abolished" because a subsequent DLSE opinion letter applied a less demanding standard. (Pet., p. 7, citing DLSE 2009.06.09, attached as Pet'r's Ex. 3.)

However, DLSE opinion letters are not precedential law that must be followed by the district courts. They merely offer guidance that may be accepted or rejected.[3] Further, unlike a court decision that has been overruled or unpublished, DLSE Opinion Letter 2002.09.04 has not been withdrawn and continues to be cited.[4] Consequently, the district court was well within its discretion in applying the standard set forth in DLSE Opinion Letter 2002.09.04. (Pet'r's Ex. 1, p. 5.) Indeed, given that there is no settled case law on the standard for the nature of the work exception, the district court was free to apply either of the DLSE letters relating to the nature of the work, or even apply its own standard or hybrid of the standards as it is ultimately left for the courts to interpret the California Labor Code, including any exceptions or defenses to Labor Code Section 226.7. Thus, the District Court committed no manifest error.

As found by the district court in its order, with respect to the 103 employee declarations provided by Defendant, "it is not clear how *any* of these

---

[3] *Sullivan v. Kelly Servs., Inc.*, No. C 07-2784 CW, 2008 U.S. Dist. LEXIS 91608, at *12 (N.D. Cal. 2008) (California courts do not defer to DSLE opinion letters, *see Estrada v. FedEx Ground Package System, Inc.*, 154 Cal. App. 4th 1, 22, 64 Cal. Rptr. 3d 327 (2007), and often disagree with the DLSE's views regarding various issues, *see Church v. Jamison, 143 Cal. App. 4th 1568, 1578-1580, 50 Cal. Rptr. 3d 166 (2006); Conley v. Pacific Gas and Elec. Co., 131 Cal. App. 4th 260, 270-71, 31 Cal. Rptr. 3d 719 (2005); Hudgins v. Neiman Marcus Group, Inc., 34 Cal. App. 4th 1109, 1121, 41 Cal. Rptr. 2d 46 (1995)"); Pugel v. Morgan Stanley*, 221 Fed. Appx. 683, 687 n.3 (9th Cir. 2007) ("DLSE opinion letters do not have the force of law" but are regularly referred to by California courts for guidance).

[4] *See, e.g., United Steel, Paper & Forestry, Rubber, Mfg. Energy, Allied Indust. & Serv. Workers Int'l Union*, 593 F.3d 802, 804 n.3 (9th Cir. 2010) (citing DLSE Opinion Letter 2002.09.04 for conditions that must be met for an "on duty" meal period to be permissible under California law).

job descriptions would qualify for the nature of the work exception." (Pet'r's Ex. 1, p. 5.)

Further, in DLSE Opinion Letter 2009.06.09 that Defendant argues the district court should have followed, the DLSE stated that "the nature-of-the-work element may not be satisfied under circumstances where the employer may have another qualified representative reasonably available to perform the attending duties[.]" (Pet'r's Ex. 3, p. 8.) Defendant's Petition, which cites to nine cherry-picked declarants (rather than the full total of the declarants that the District Court considered) in a failed effort to show that "off-duty" meals were provided, supports that individuals could be relieved by other workers. (Pet., pp. 16-17.) Accordingly, these declarations support the common legal issue of whether the "nature of the work" exception applies to class members.

On the other hand, to the extent Defendant's nine declarations represent a statistically insignificant minority whose meal breaks were arguably "off duty," these declarations fail to undermine the district court's determination that there are predominate common issues of fact and law as to "the implementation of [Defendant's] waiver policy and its legality."[5] (Pet'r's Ex. 1, p. 5.) Moreover, it should be noted that all but two of the Defendant's nine declarants stated in their declarations that they had agreed to take "on duty" meals due to the nature of their work – which were the type of facts the district court noted in making its decision.

It is also important to note that by only presenting a small portion of the evidence that the District Court considered—District Court carefully considered and weighed all 103 submitted declarations of Defendant—in making

---

[5] Statistically speaking, 9 individuals is approximately consistent with the 0.1% exception to the 99.9% of Defendant's business consisting of single guard posts that Defendant's PMK Leo Flury originally testified to in this deposition. (Pet'r's Ex. 1, p. 4 n.4.)

it ruling, Defendant has failed to present sufficient evidence to the Court of Appeal to allow the Court of Appeal to even consider whether the District Court's ruling was in error. Thus, in the most basic way, Defendant even in making its main argument, Defendant has failed to present the Court of Appeal with a sufficient record upon which the Court of Appeal could consider whether the District Court erred or not.

Defendant has failed to establish that the district court's finding that the nature of the work did not prevent off-duty meals was a legal error, much less that it warrants immediate review.

## 2. The District Court's Finding that Class Members Were Not Provided Off-Duty Meals Is Not in Error, Either Factually or Legally

### a. "On-Call" Time Is Not at Issue

In what seems to be an attempt to confuse the issue, Defendant turns to law related to "on call" time and "mandatory standby" which is inapposite to the question of whether the nature of the work prevented class members from taking off-duty meals. (Pet., pp. 13-16.) This is not a case where employees are required to wear pagers and be on call, either during a lunch break or at any other time, on the clock or off the clock. There have been no allegations by either party, nor any evidence submitted, in an effort to establish either that class members were subjected to an "on call" policy, or that they were not. On call is completely irrelevant to the certification.

Here, class members were required to take on-duty meals and the question is whether the nature of the work provides Defendant with a defense. The district court determined that none of Defendants' declarations establishes that the declarant was categorically given off-duty meal breaks and further noted that very few of the declarations unambiguously demonstrate that the employee was entirely

relieved of duty. (Pet'r's Ex. 1, p. 5.) The January 28, 1992 DLSE Opinion Letter cited by Defendant (Pet., p. 14), addressing the use of pagers during meal periods, does not support a finding that the district court was in error in determining that off-duty meal breaks were not provided. Nor do the "on-call" and "mandatory standby" cases also cited by Defendant.[6]

### b. The District Court Did Not Err in Finding Predominant Issues of Fact and Law

In reaching its decision to certify the Meal Break Class, the district court noted the common fact that "all putative subclass members were required to sign an 'On-Duty Meal Break Consent Agreement.'" (Pet'r's Ex. 1, p. 4.)[7] Further, the district court noted that "Defendant has admitted that a large majority of its employees work at 'single guard posts' where there is no other employee to relieve them from their duties, requiring the employees to take on-duty meals." (Pet'r's Ex. 1, p. 4.) Next, the district court turned to the 103 declarations submitted by Defendant, and, as noted above, found that "[n]one of these declarations establishes that the declarant was categorically given off-duty meal breaks." (Pet'r's Ex. 1, p. 5.)

Defendant contends that this finding was "manifestly erroneous." (Pet., p. 18.) However, just as it is possible, as previously noted, that not "all" employees signed "On Duty Meal Break Consent Agreements," it is possible that a statistically insignificant number of individuals arguably may have been given "off-duty" meals. Defendant makes too much of this. As the district court found:

---

[6]  Only one of these cases even addressed employees who were "on call" during meal periods, and that was in the context of the FLSA. *See Armitage v. City of Emporia*, 982 F.2d 430, 431-432 (10th Cir. 1992).

[7]  It is worth noting that Defendant does not argue that not "all" employees signed On-Duty Meal Break Consent Agreements, obviously recognizing that the vast majority did so and that any exceptions were insignificant.

> Given the uniform policy of requiring the putative subclass members to sign the on-duty meal break agreement and the evidence that, ***in the vast majority of cases***, this policy was implemented to require on duty meal breaks to be taken, Plaintiffs have established common and predominate issues of fact and law concerning the implementation of this waiver policy and its legality.

(Pet'r's Ex. 1, p. 5.) (emphasis added).

Contrary to Defendant's contention, the possible existence of a few individuals who were provided off-duty meals, which the district court acknowledged in focusing on the "vast majority," is no basis for a finding that the district court's ruling was "manifestly erroneous."

### c. Defendant's Declarations Should Have Been Excluded

As noted by the district court, Plaintiff objected to Defendant's declarations on the basis that they were not timely disclosed pursuant to Defendant's duty and obligations under Rule 26 and should be excluded pursuant to Federal Rule of Civil Procedure 37(c)(1). (Pet'r's Ex. 1, p. 4, n.5.) However, the district court did not reach the issue of whether the declarations should be excluded "[s]ince [its] conclusions with respect to the instant Motion would be the same irrespective of [its] consideration of the declarations, and since Defendant represents that the declarations have now been disclosed in a supplemental initial disclosure." (Pet'r's Ex. 1, p. 4, n.5.)

It is Plaintiff's position that these untimely declarations should not have been considered by the district court and should not be considered here. *See Yeti v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001) ("exclusion is an appropriate remedy for failing to fulfill the required disclosure requirements of Rule 26(a)). It is not manifestly erroneous to weigh declarations properly completely excludable against the party providing them.[8] Although the district

---

[8] *See also Cambridge Elecs. v. MGA Elecs., Inc.*, 227 F.R.D. 313, 323 (C.D. Cal. 2004).

court did consider these declarations in reaching its decision, it is not this Court's role to re-weigh the district court's fact finding. Further, this Court can properly decide to not consider these declarations pursuant to the important obligations of parties in complying with Rule 26(f) and if these declarations are excluded then Defendant has presented no evidence sufficient to warrant this Court hearing an appeal and the District Court would have committed no error at all in reaching its ruling as the declarations are precisely what Defendant bases this petition on.

Nor is there a means to do so since Defendant submitted to this Court and cited to only nine declarations in support of its argument that "numerous declarants unambiguously stated that they took <u>off-duty</u> meal breaks."[9] (Pet., p. 16.) Moreover, the declarations cited fail to support Defendant's contention. Only the Arroyo Declaration references clocking in and out for a meal break, but then states "I just have Northgate know when I am going to lunch and they initial the time I left and come back." (Pet'r's Ex. 9, ¶¶ 8, 9.) Apparently, out of all 103 declarations, this somewhat ambiguous statement is the best Defendant could do. It is not nearly good enough, however, to support a finding that the district court "made a very significant factual error." (Pet., p. 16.)[10]

**D.    There Is No Unsettled and Fundamental Issue of Law That Is Likely to Evade End-of-the-Case Review As to Whether the "Nature of the Work" Exception Could Be Determined on a Class-Wide Basis**

---

[9]   By submitting only nine declarations in support of its contention, Defendant fails to provide this Court with the evidence needed to review the district court's finding with respect to all 103 declarants.

[10]   Nor does the Tekleab Declaration, cited by Defendant at page 18 of the Petition, support that employees were provided the opportunity to take off-duty meal breaks and chose not to, as in the paragraph cited he discusses his ability to take on-duty meal breaks. (Pet., p. 18; Pet'r's Ex. 17, ¶ 12.)

While it is somewhat unclear from the Petition, Defendant apparently attempts to satisfy this requirement by arguing that "the district court improperly found that the "nature of the work" exception could be determined on a class-wide basis." (Pet., pp. 8-13.)  Defendant contends that review of the decision "would help to clarify the standards for evaluating motions to certify on-duty meal break classes as well as reaffirm the proper scope and focus of a District Court's inquiry for ruling on class certifications." (Pet., p. 13.)  This is a clear example of the "many class certification decisions" that "present familiar and almost routine issues that are no more worthy of immediate appeal than many other interlocutory rulings[.]" *Chamberlan*, 402 F.3d at 959 (citing Fed. R. Civ. P. 23(f), Advisory Committee Notes to 1998 Amendments).

Moreover, Defendant does not even attempt to argue that this is an "unsettled and fundamental issue of law relating to class actions . . . . that is likely to evade end-of-the-case review." *Chamberlan*, 402 F.3d at 959.  Nor could such an argument succeed.  Indeed, Section II of Defendant's Petition fails entirely to satisfy this, or any other ground for interlocutory review established by this Court in *Chamberlan*.

Instead, relying entirely on two DLSE opinion letters, Defendant contends that the nature of the work exception requires "individualized, fact-specific analysis." (Pet., p. 8.)  However, DLSE Opinion Letter 2009.06.09 noted that it was not asked to and did not comment on the application of the on-duty meal period requirements for time when the driver is not engaged in activity regulated by the referenced federal regulations, and merely speculated that off-duty meals might be possible in that case.  The other letter cited, DLSE Opinion Letter 1994.09.28 simply gives examples of work situations where the nature of the work could require on-duty meals. (Pet'r's Ex. 5, p. 2.)  As noted above, DLSE opinion letters do not have the force of law and, even if they did, these letters do not

support Defendant's argument that the district court improperly held that the nature of the work exception could be determined on a class-wide basis. (Pet., p. 9.)

Defendant proceeds to use sleight of language to attempt to create an issue where none exists. Defendant argues that "the 'nature of the work' varies a great deal across the class." (Pet., p. 10.) But Defendant then proceeds, citing two declarations, to discuss differences in job descriptions – rather than legally significant differences in the nature of the work.[11] (Pet., pp. 10-11.) As the district court found, "[t]the variety of the work itself is immaterial unless the particular nature of certain job duties prevents an off-duty meal break from being taken. No evidence has been offered by Defendant that certain worksites presented such unique considerations that employees were unable to take an off-duty meal break." (Pet'r's Ex. 1, p. 5.) Contrary to Defendant's argument, the district court did not abuse its discretion by disregarding legally insignificant variations.

Further, the district court was well within its discretion in citing to *West v. Circle K Stores, Inc.*, No. CIV S-04-0438 WBS GGH, 2006 WL 165298, at *4 (E.D. Cal. June 13, 2006), for the proposition that:

> We must be cautious of a defendant invoking the "nature of the work" exception on the grounds that there are "case-by-case, shift-by-shift" differences, because this "would potentially eviscerate the protections provided by California Labor Code § 226.7, as every employer would defend against a claim of missed meal periods by arguing that, because of the nature of the employee's work on that day, he was too busy to take a break.

(Pet'r's Ex. 1, p. 5.)[12]

---

[11] At best, the "type of work" is but one of the factors a court may consider in determining the applicability of the nature of the work exception. (Pet'r's Ex. 4, p. 2.)

[12] That the facts of the *West* case and this case may be different does not, as Defendant argues, does not make the concern expressed by the *West* court, and shared by the District Court, any less valid.

The *West* case is persuasive legal authority from this circuit which the district court was well within its discretion to follow. Contrary to Defendant's argument, a subsequent DLSE opinion letter, to the extent it differs from the *West* court's findings, does not affect the continued viability of the *West* court's reasoning and decision.

In sum, Defendant's argument that the district court improperly found that the "nature of the work" exception could be addressed on a class-wide basis is not supported either by fact or law and does not even come close to presenting "an unsettled and fundamental issue of law relating to class actions, important both to the specific litigation and generally, that is likely to evade end-of-the-case review[.]" *Chamberlan*, 402 F.3d at 959. Further, to the extent Defendant may instead be arguing in Section II of its Petition that this finding is manifestly erroneous, Defendant's argument also fails to satisfy this ground for interlocutory review. *Id.*

## E.     There Is No Death Knell Situation

While not using the term "death knell," Defendant attempts to manufacture a "death knell" situation first by arguing that it "is entitled to defend against liability for meal period violations by showing that on-duty meal period requirements, including the nature of the work, were met on a shift-by-shift basis for each individual class member" and that the time and expense would be "disproportionate to the potential value of each claim." (Pet., p. 19.) However, the district court found that common issues predominate as to the meal break claim, making such individualized inquiry unnecessary. Moreover, Defendant fails to establish that such costs of litigation, were they necessary, would result in a "death knell" situation.[13] Defendant further argues that the potential number of

---

[13]   Defendant and Plaintiffs will be able to do discovery on the factual issues post certification including relating to factual issues dealing with the jobs of the

claims and aggregate dollar amount involved put Defendant under pressure "to settle the case without reaching the merits."[14] (Pet., p. 20.) While being forced "to settle rather than incur the costs of defending a class action and run[ning] the risk of potentially ruinous liability" is a factor identified by the *Chamberlan* court as one that could sound the death knell of the litigation, "[w]hen evaluating whether the certification would end the litigation for [Defendant]," the court must consider whether Defendant "has sufficiently demonstrated that the damages claimed would force a company of its size to settle without relation to the merits of the class's claims." *Chamberlan,* 405 F.3d at 957, 960 (internal quotation marks omitted).

Defendant has failed to do so. Defendant's entire "demonstration" consists of the statement that "[t]he meal period class contains an estimated 5,500 members who performed work in California from July 1, 2007 to the date of trial." (Pet., p. 19.) This statement does not begin to support a finding that certification of the Meal Break Subclass would put Defendant "under enormous pressure" to settle.[15]

---

security guards and the nature of the work defense, and if at that time factual issues arise to support a nature of the work defense, Defendants can at that time choose to file a motion to de-certify the class asking for the court's view of the "correct" DLSE Opinion Letter to be applied then. Thus, there is nothing necessary for the Ninth Circuit to consider at this point.

[14] While Defendant does not specify "meal break" claims in making this argument, its entire petition is directed solely toward the district court's certification of the Meal Break Class. Accordingly, and in the context of other language in Pet., Section IV., specifically addressing the meal period class, Plaintiff assumes that Defendant refers here only to claims of the Meal Break Class.

[15] By contrast, in *In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 1015-16 (7th Cir. 2002), interlocutory appeal was granted where "[a]ggregating millions of claims on account of multiple products manufactured and sold across more than ten years [made] the case so unwieldy, and the stakes so large, that settlement becomes almost inevitable--and at a price that reflects the risk of a catastrophic judgment as much as, if not more than, the actual merit of the claims."

Further, as established by *Blair v. Equifax Check Servs., Inc.*:

> the appellant must demonstrate that the district court's ruling on class certification is questionable--and must do this taking into account the discretion the district judge possesses in implementing Rule 23, and the correspondingly deferential standard of appellate review. However dramatic the effect of the grant or denial of class status in undercutting the plaintiff's claim or inducing the defendant to capitulate, if the ruling is impervious to revision there's no point to an interlocutory appeal.

*Blair v. Equifax Check Servs., Inc.*, 181 F.3d 832, 835 (7th Cir. 1999).

As in *Chamberlan*, Defendant here has "made no showing that it lacks the resources to defend this case to a conclusion and appeal if necessary or that doing so would 'run the risk of ruinous liability.'" *Id.* at 960 (citing Fed. R. Civ. P. 23, Advisory Committee Notes to 1998 Amendments, Subdivision (f)). Nor, as shown above, is the district court's decision questionable. *Blair*, 181 F.3d at 835.

Moreover, the lack of a "death knell" is even more pronounced here, where Defendant addresses its entire petition to the certification of only one of seven subclasses which were certified by the district court. The other subclasses certified contain approximately the same number of class members. Yet Defendant does not contend that the certification of these subclasses sounds a "death knell" by pressuring it to settle. Defendant's contention thus begs the question of why certification of six subclasses would not sound a death knell, but certification of only one subclass would. It seems obvious that Defendant did not directly address the "death knell" ground for interlocutory review because it was aware that no such ground exists.

## VI. CONCLUSION

For the reasons stated above, Respondent Abdullah respectfully requests that Defendant's petition for permission to appeal be denied and that, to the extent Defendant seeks permission to appeal certification of all seven

subclasses certified by the district court, not only the Meal Break Subclass addressed by its Petition, that permission to appeal be denied as to all Subclasses certified by the district court.

Dated:  February 4, 2011         Respectfully Submitted,

                                   **LAW OFFICES OF KENNETH H. YOON**

                                   By: s/ Linda P. Whitehead
                                   Linda P. Whitehead
                                   Attorney for Plaintiffs/Respondents
                                   Muhammed Abdullah, Christina Aguilar and
                                   William  Kimbrough, IV

| 9th Circuit Case Number(s) | 11-80017 |
|---|---|

NOTE: To secure your input, you should print the filled-in form to PDF (File > Print > *PDF Printer/Creator*).

*********************************************************************************

## CERTIFICATE OF SERVICE
### When All Case Participants are Registered for the Appellate CM/ECF System

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on (date)

| Feb 4, 2011 |
|---|

.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Signature (use "s/" format)

| s/ Elly W. Wong |
|---|

*********************************************************************************

## CERTIFICATE OF SERVICE
### When <u>Not</u> All Case Participants are Registered for the Appellate CM/ECF System

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on (date)

| Feb 4, 2011 |
|---|

.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

I further certify that some of the participants in the case are not registered CM/ECF users. I have mailed the foregoing document by First-Class Mail, postage prepaid, or have dispatched it to a third party commercial carrier for delivery within 3 calendar days to the following non-CM/ECF participants:

| Otis Jr. McGee at Sheppard Mullin Richter & Hampton LLP, Four Embarcadero Center 17th Floor, San Francisco, CA 94111-4106; Peter M. Hart, Melissa M. Coyle, Kimberly A. Westmoreland at Law Offices of Peter M. Hart, One Wilshire Blvd., Suite 2200, Los Angeles, CA 90017 |
|---|

Signature (use "s/" format)

| s/ Elly W. Wong |
|---|